1    **WO**

2

3

4

5

6              **IN THE UNITED STATES DISTRICT COURT**

7                **FOR THE DISTRICT OF ARIZONA**

8

9    Holly Skelton,                              No. CV-22-00703-PHX-DWL

10                Plaintiff,                      **ORDER**

11   v.

12   Commissioner     of    Social    Security
     Administration,
13
                 Defendant.
14

15         Plaintiff challenges the denial of her application for benefits under the Social

16   Security Act ("the Act") by the Commissioner of the Social Security Administration

17   ("Commissioner").   The Court has reviewed Plaintiff's opening brief (Doc. 19), the

18   Commissioner's answering brief (Doc. 20), and Plaintiff's reply (Doc. 21), as well as the

19   Administrative Record (Doc. 14, "AR"), and now reverses the Administrative Law Judge's

20   ("ALJ") decision and remands for further proceedings.

21   I.    Procedural History

22         On February 20, 2019, Plaintiff filed an application for disability and disability

23   insurance benefits, alleging disability beginning on October 15, 2017.  (AR at 162.)  The

24   Social Security Administration ("SSA") denied Plaintiff's application at the initial and

25   reconsideration levels of administrative review and Plaintiff requested a hearing before an

26   ALJ.  (*Id*.)  On February 12, 2021, following a telephonic hearing, the ALJ issued an

27   unfavorable decision.  (*Id*. at 162-176.)  The Appeals Council later granted Plaintiff's

28   request for review but affirmed the decision of the ALJ after considering additional records

1    that went unconsidered by the ALJ.  (*Id.* at 29-31.)

2    II.    The Sequential Evaluation Process And Judicial Review

3            To determine whether a claimant is disabled for purposes of the Act, the ALJ

4    follows a five-step process.  20 C.F.R. § 404.1520(a).  The claimant bears the burden of

5    proof on the first four steps, but the burden shifts to the Commissioner at step five.  *Tackett*

6    *v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  At the first step, the ALJ determines whether

7    the claimant is presently engaging in substantial gainful activity.    20 C.F.R.

8    § 404.1520(a)(4)(i).  At step two, the ALJ determines whether the claimant has a "severe"

9    medically determinable physical or mental impairment.  20 C.F.R. § 404.1520(a)(4)(ii).  At

10   step three, the ALJ considers whether the claimant's impairment or combination of

11   impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P

12   of 20 C.F.R. Part 404.  20 C.F.R. § 404.1520(a)(4)(iii).  If so, the claimant is automatically

13   found to be disabled.  *Id.*  At step four, the ALJ assesses the claimant's residual functional

14   capacity ("RFC") and determines whether the claimant is capable of performing past

15   relevant work.  20 C.F.R. § 404.1520(a)(4)(iv).  If not, the ALJ proceeds to the fifth and

16   final step, where she determines whether the claimant can perform any other work in the

17   national economy based on the claimant's RFC, age, education, and work experience.  20

18   C.F.R. § 404.1520(a)(4)(v).  If not, the claimant is disabled.  *Id.*

19           An ALJ's factual findings "shall be conclusive if supported by substantial

20   evidence."  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019).  The Court may set aside

21   the Commissioner's disability determination only if it is not supported by substantial

22   evidence or is based on legal error.  *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).

23   Substantial evidence is relevant evidence that a reasonable person might accept as adequate

24   to support a conclusion considering the record as a whole.  *Id.*  Generally, "[w]here the

25   evidence is susceptible to more than one rational interpretation, one of which supports the

26   ALJ's decision, the ALJ's conclusion must be upheld."  *Thomas v. Barnhart*, 278 F.3d 947,

27   954 (9th Cir. 2002) (citations omitted).  In determining whether to reverse an ALJ's

28   decision, the district court reviews only those issues raised by the party challenging the

1   decision. *Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001).

2   III.   The ALJ's Decision

3   The ALJ found that Plaintiff had not engaged in substantial, gainful work activity

4   since the alleged onset date and that Plaintiff had the following severe impairments:

5   "cervical and lumbar spondylosis, degenerative disc disease and degenerative joint disease

6   of the lumbar spine, and migraines." (AR at 165.)[1] Next, the ALJ concluded that Plaintiff's

7   impairments did not meet or medically equal a listing. (*Id*. at 167-68.)  Next, the ALJ

8   calculated Plaintiff's RFC as follows:

9       [T]he claimant had the residual functional capacity to perform light work as
        defined in 20 CFR 404.1567(b) except the claimant can frequently balance,
10      stoop, kneel, crouch, climb ramps/stairs and occasionally crawl and climb
        ladders, ropes, and scaffolds.  The claimant can overhead reach.  In addition,
11      she must avoid concentrated exposure to extreme cold, fumes, odors, dusts,
        gases, and poor ventilation.  The claimant cannot be exposed to dangerous
12      machinery and unprotected heights.
13

14   (*Id.* at 168.)

15   As part of this RFC determination, the ALJ evaluated Plaintiff's symptom

16   testimony, concluding that Plaintiff's "medically determinable impairments could

17   reasonably be expected to cause the alleged symptoms; however, the claimant's statements

18   concerning the intensity, persistence and limiting effects of these symptoms are not entirely

19   consistent with the medical evidence and other evidence in the record for the reasons

20   explained in this decision." (*Id.* at 169. *See also id.* at 165-67 [evaluating Plaintiff's

21   testimony regarding mental symptoms during step-two analysis].)  The ALJ also evaluated

22   opinion evidence from various medical sources, concluding as follows: (1) Dr. Kari

23   Coelho, Psy.D., state agency psychological consultant ("persuasive"); (2) Dr. Sunitha

24   Bandlamuri, M.D., treating physician ("unpersuasive"); and (3) "the State agency

25   ───────────────
     [1]    The ALJ also noted that Plaintiff presented evidence of "peripheral neuropathy,
26   hiatal hernia, and urinary incontinence" but determined that those impairments "do not
     cause more than a minimal effect on her ability to perform the basic work activities" and
27   were thus "nonsevere." (AR at 165.)  Similarly, the ALJ evaluated Plaintiff's "medically
     determinable mental impairments of an anxiety disorder and depressive disorder" but
28   concluded that they "did not cause more than minimal limitation in the claimant's ability
     to perform basic mental work activities and were therefore nonsevere." (*Id.* at 165-67.)

- 3 -

1  psychological reviewers" ("persuasive"). (*Id.* at 171-74.)[2]  Additionally, the ALJ evaluated

2  a third-party statement from Plaintiff's mother ("unpersuasive"). (*Id.* at 173.)

3        Based on the testimony of a vocational expert, the ALJ concluded that Plaintiff

4  could perform her past relevant work as an office manager and medical secretary. (*Id.* at

5  175.)  Thus, the ALJ concluded that Plaintiff is not disabled. (*Id.* at 175-76.)

6  IV.   Discussion

7        Plaintiff presents four issues on appeal: (1) whether the ALJ properly evaluated

8  "Plaintiff's mental impairments and limitations"; (2) whether the ALJ properly evaluated

9  "the medical opinions and prior administrative medical findings"; (3) whether the ALJ's

10  RFC determination was "supported by the substantial evidence"; and (4) whether the ALJ

11  adjudicated "the entire period-at-issue." (Doc. 19 at 1-2.)  As a remedy, Plaintiff requests

12  "that this case be remanded to the Commissioner for further proceedings." (*Id.* at 25.)

13       A.    **Mental Impairments And Limitations**

14       Plaintiff's first assignment of error lumps together two distinct, if related,

15  challenges—Plaintiff faults the ALJ for failing to categorize her mental impairments as

16  "severe" during step two of the sequential analysis and then faults the ALJ for failing to

17  consider those impairments when formulating the RFC.  For purposes of analytical clarity,

18  the Court will analyze those challenges separately.

19       To proceed beyond step two, a claimant must have a severe impairment, or a

20  combination of severe impairments, that "significantly limits [her] physical or mental

21  ability to do basic work activities." 20 C.F.R. § 404.1520(c).  "An impairment is not severe

22  if it is merely 'a slight abnormality (or combination of slight abnormalities) that has no

23  more than a minimal effect on the ability to do basic work activities.'" *Webb v. Barnhart*,

24  433 F.3d 683, 686 (9th Cir. 2005) (citations omitted).  Notably, "[s]tep two is merely a

25  threshold determination meant to screen out weak claims." *Buck v. Berryhill*, 869 F.3d

26

27  [2]     The ALJ's opinion does not refer to "[t]he State agency psychological consultative
   reviewers" by name. (AR at 172.)  As the ALJ noted, their corresponding opinions appear
28  at "Exhibit 1A" (AR at 73-92), "Exhibit 4A" (AR at 113-132 ), and "Exhibit 6A" (AR at
   134-58).

1040, 1048 (9th Cir. 2017) (citation omitted).   Because the ALJ must evaluate the functional impact of both severe and non-severe impairments when determining the RFC during later steps, "[t]he RFC . . . should be exactly the same regardless of whether certain impairments are considered 'severe' or not."  *Id*. at 1049 (emphasis omitted).

Given these principles, to the extent Plaintiff's argument is that the ALJ erred by failing to categorize her anxiety and depression as severe for step-two purposes (Doc. 19 at 10-12), reversal is not warranted.  "As this Court has observed in earlier cases, Ninth Circuit law is not a model of clarity concerning how to evaluate claims of step-two error. Some cases suggest that, although it is error for an ALJ to fail to characterize a particular impairment as 'severe' during step two, the error can be disregarded as harmless if the ALJ properly addresses the impairment during later steps.  Other decisions suggest that a claimant can't complain about an ALJ's failure to identify a particular impairment as 'severe' during step two so long as the ALJ determined the claimant also had other impairments that so qualify.  At any rate, the dispositive issue is whether the ALJ properly evaluated the evidence and testimony concerning that condition during later steps and factored that condition into the RFC."  *Harvey v. Comm'r of Soc. Sec. Admin.*, 2021 WL 5822641, *2 (D. Ariz. 2021) (cleaned up).  Accordingly, the dispositive issue here is whether Plaintiff has established the existence of harmful error with respect to the ALJ's RFC formulation during later steps.  The dispute over the step-two severity characterization is a red herring.

As for the merits of the RFC determination, "[t]he ALJ assesses a claimant's RFC based on all the relevant evidence in the case record.  The ALJ must consider both the medical evidence and descriptions and observations of the claimant's limitations from the claimant's impairment(s), including limitations that result from the claimant's symptoms, such as pain, provided by the claimant, family, friends, and other people.  The RFC assessment must contain a thorough discussion and analysis of the objective medical and other evidence, including the individual's complaints of pain and other symptoms and the adjudicator's personal observations, if appropriate.  In other words, the ALJ must take the

- 5 -

1    claimant's subjective experiences of pain into account when determining the RFC."

2    *Laborin v. Berryhill*, 867 F.3d 1151, 1153 (9th Cir. 2017) (cleaned up).  *See also Vertigan*

3    *v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) ("[I]t is the responsibility of the ALJ, not

4    the claimant's physician, to determine residual functional capacity.").   "Under the

5    substantial-evidence standard, a court looks to an existing administrative record and asks

6    whether it contains 'sufficient evidence' to support the agency's factual determinations."

7    *Biestek*, 139 S. Ct. at 1154.

8         At least as it relates to the ALJ's consideration of limitations arising from mental

9    impairments, the Court finds no harmful error in the ALJ's RFC formulation.  As an initial

10   matter, the ALJ followed the exact process that the relevant authorities and regulations

11   require ALJs to follow when making an RFC determination—the ALJ expressly considered

12   all of the medical opinions in the record related to Plaintiff's mental impairments, as well

13   as Plaintiff's testimony regarding the symptoms arising from her mental impairments and

14   the testimony of third-party witnesses regarding those symptoms, and provided reasons for

15   crediting or not crediting each of those evidentiary sources.  (AR at 168-74. *See also id.* at

16   165-67 [evaluating mental impairments for step-two purposes].)

17        As for the substance of the RFC, although Plaintiff accuses the ALJ of failing to

18   "consider these nonsevere [mental] impairments when formulating Plaintiff's [RFC]"

19   (Doc. 19 at 14), the ALJ expressly considered those conditions in the portion of the decision

20   setting forth the RFC determination.  There, the ALJ addressed (1) Plaintiff's testimony

21   concerning the symptoms related to her mental impairments (AR at 168-69); (2) the

22   observations and opinions of medical sources on the same topic (*id.* at 169-72); (3) the

23   observations of a third-party on the same topic (*id.* at 173); (4) the consultative evaluation

24   of Dr. Coelho (*id.* at 171-72); and (5) Plaintiff's activities of daily living ("ADLs") (*id.* at

25   173-74).  As part of that discussion, the ALJ addressed Plaintiff's mental impairments,

26   including her self-reported symptoms of struggling to "remember, complete tasks,

27   concentrate, understand, follow instructions, get[] along with others" as well as

28   "flashbacks[,] nightmares, anxiety and depression."  (*Id.* at 168-69.)   The ALJ then

identified several reasons for discrediting those claims.  For example, the ALJ noted that during her physical examinations, Plaintiff "was awake, alert, oriented, and followed commands." (*Id.* at 169, citing AR at 489.)  The ALJ also specifically discussed the results of the evaluation performed by Dr. Coelho.  (*Id.* at 171-72.)  During that evaluation, Plaintiff admitted "she was not participating in any type of mental health treatment," stated that she "had never been hospitalized for psychiatric reasons as an adult," and "denied being depressed or anxious at this time or being suicidal, helpless, hopeless, worthless, or crying." (*Id.* at 172, citing AR at 694-98.)  The ALJ further noted that despite Dr. Coelho's diagnosis of an "anxiety disorder" and observation that Plaintiff was "crying and [displayed] some emotional dysregulation during the exam that [Plaintiff] attributed to" a medication change, Plaintiff "scored a 29 out of 30 on the Mini Mental Status examination" and "dressed herself on a daily basis without assistance, took baths, vacuumed, put dishes away, prepared simple meals, did laundry with help, and enjoyed gardening and taking care of her animals." (*Id.* at 172.)  Finally, the ALJ noted that Plaintiff was not pursuing any "ongoing formal mental health treatment" and instead "reported that Kratom tea and black seed oil had been helping with anxiety and she did not need Xanax anymore." (*Id.* at 172, citing AR at 776.)  Given this backdrop, the ALJ's determination of Plaintiff's RFC, as least as it relates to Plaintiff's mental impairments, was supported by substantial evidence. *See, e.g., Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017) ("[E]vidence of medical treatment successfully relieving symptoms can undermine a claim of disability."); *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) ("An ALJ may consider a range of factors in assessing credibility, including . . . 'unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment.'") (quotation omitted); *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 693 (9th Cir. 2009) (ALJ properly relied on evidence that the claimant's allegations regarding the severity of his limitations were exaggerated); *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (although subjective testimony "cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor"

in determining the severity of the claimant's limitations); *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (ADLs can be probative of a claimant's credibility); *Morris v. Berryhill*, 358 F. Supp. 3d 875, 884 (D. Ariz. 2019) ("This was a clear and convincing reason for finding plaintiff's symptom statements less than credible because in numerous treatment notes, plaintiff reported that she was doing well, found her medications beneficial, and had no side effects from her medication.").

Nor is there any merit to Plaintiff's contention that the ALJ failed to consider, and incorporate into the RFC, the mental limitations described by Dr. Coelho. (Doc. 19 at 13 ["[T]he unrefuted opinion from Dr. Coelho indicated Plaintiff had functional limitations stemming from her mental impairments. In particular, Dr. Coelho opined Plaintiff was limited to 'carrying out simple instructions' and that her lack of sleep and pain 'could affect her ability to maintain attention and concentration for a sustained period of time.'"].) As background, Dr. Coelho expressed her opinions in a form entitled "Psychological/Psychiatric Medical Source Statement." (AR at 699-700.) At the outset of the form, Dr. Coelho indicated that Plaintiff had "a current psychological diagnosis" and that Plaintiff had "limitations associated with this condition . . . [that are] expected to last 12 continuous months from the date of this exam." (AR at 699.) As for three of the four potential categories of mental impairments ("understanding and memory," "social interaction," and "adapting to change"), Dr. Coelho did not identify "any significant problems." (*Id.*) As for the fourth category ("sustained concentration and persistence"), Dr. Coelho wrote the following:

> [Plaintiff] did appear capable of carrying out simple instructions. She demonstrated sufficient levels of attention and concentration during the evaluation. The claimant is reporting sleep disturbance. She awakens approximately twice nightly, has nightmares, and increased perspiration. She can return to sleep right away. She may nap 30-60 minutes at a time during the day or up to 3 hours depending on her energy and fatigue. She has chronic migraine headaches. At times, she has to lay down in a dark room due to her migraines and she often vomits. Depending on the amount of sleep and the amount of pain that she is experiencing at a single time, it could affect her ability to maintain attention and concentration for a sustained period of time. She does get out of bed on a daily basis. She is reporting low levels of energy on a consistent basis. She does appear capable of providing reliable transportation for herself[.]

1    (*Id.*)

2    Plaintiff's challenge to the ALJ's evaluation of Dr. Coelho's opinions, and the

3    Commissioner's defense of the ALJ's evaluation, both ultimately turn on whether the ALJ

4    properly interpreted this passage from Dr. Coelho's report.[3]  The Court is mindful that "we

5    leave it to the ALJ to determine credibility, resolve conflicts in the testimony, and resolve

6    ambiguities in the record."  *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015)

7    (quoting *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014)).

8    With this principle in mind, the Court finds no error.  The ALJ interpreted Dr. Coelho's

9    opinion as not imposing any limitations on Plaintiff's ability to concentrate or persist.  (AR

10   at 172 ["Although Dr. Coelho diagnosed the claimant with an anxiety disorder, she noted

11   no limitations due to mental impairment/symptoms."].)   The Court cannot say this

12   conclusion was in error.  Much of the parties' dispute centers on the following sentence in

13   Dr. Coelho's report: "[Plaintiff] did appear capable of carrying out simple instructions."

14   (AR at 699.)  In Plaintiff's view, this sentence should be viewed as an expression of a

15   limitation—*i.e.*, that Plaintiff can only follow simple instructions and would be unable to

16   follow more complex instructions.  Although this interpretation is plausible, it was rational

17   for the ALJ to interpret it as a mere observation that Plaintiff was, in fact, capable of

18   following the simple instructions Dr. Coelho provided during the examination.  Indeed, in

19   the very next sentence in the report, Dr. Coelho wrote that Plaintiff "demonstrated

20   sufficient levels of attention and concentration during the evaluation."  (*Id.*)  Because both

21   sides have offered rational (if competing) interpretations of Dr. Coelho's ambiguous

22   statement, this Court must affirm.  *Ghanim*, 763 F.3d at 1163 ("When evidence reasonably

23   supports either confirming or reversing the ALJ's decision, we may not substitute our

24   judgment for that of the ALJ.") (citing *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d

25

26   [3]    Plaintiff does not argue that the ALJ failed to consider the supportability and
27   consistency factors when evaluating Dr. Coelho's opinion, which is the typical method of
     challenging an ALJ's consideration of a medical source's opinion in a Social Security
     appeal.  To the contrary, Plaintiff argues that the ALJ properly characterized Dr. Coelho's
28   opinions as persuasive but failed to incorporate Dr. Coelho's opined-to limitations in the
     RFC.

1    1190, 1196 (9th Cir. 2004)).

2          The same analysis applies to the other ambiguous statement in Dr. Coelho's report,

3    which was that "[d]epending on the amount of sleep and the amount of pain that [Plaintiff]

4    is experiencing at a single time, it could affect her ability to maintain attention and

5    concentration for a sustained period of time." (AR at 699.) Although Plaintiff plausibly

6    interprets this statement as an expression of limitation (Doc. 19 at 17), it was rational for

7    the ALJ to conclude otherwise, given that Dr. Coelho merely noted that the symptoms

8    "could" undermine Plaintiff's attention and concentration. "Although alternative views of

9    this evidence are plausible, the ALJ's interpretation is a rational one and is therefore

10   entitled to deference." *Baca v. Comm'r of Soc. Sec. Admin.*, 2021 WL 1827232, *6 (D.

11   Ariz. 2021).

12          B.     **Medical Opinions And Administrative Findings**

13          Plaintiff next argues that the ALJ "did not properly evaluate the medical opinions

14   and prior administrative medical findings." (Doc. 19 at 16.) Specifically, Plaintiff argues

15   the ALJ misinterpreted the opinions of Dr. Coelho, "did not evaluate the medical opinion

16   from Henry Saldana, PT," and "did not adopt all the limitations from the prior

17   administrative medical findings." (*Id.* at 16-20.)

18          1.     Standard of Review

19          In January 2017, the SSA amended the regulations concerning the evaluation of

20   medical opinion evidence. *See Revisions to Rules Regarding Evaluation of Medical*

21   *Evidence*, 82 Fed. Reg. 5844 (Jan. 18, 2017). Because the new regulations apply to

22   applications filed on or after March 27, 2017, they are applicable here.

23          The new regulations, which eliminate the previous hierarchy of medical opinions,

24   provide in relevant part as follows:

25          We will not defer or give any specific evidentiary weight, including
             controlling weight, to any medical opinion(s) or prior administrative medical
26          finding(s), including those from your medical sources . . . . The most
             important factors we consider when we evaluate the persuasiveness of
27          medical opinions and prior administrative medical findings are supportability
28          . . . and consistency . . . .

- 10 -

20 C.F.R. § 416.920c(a).[4]   Regarding the "supportability" factor, the new regulations explain that the "more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s), . . . the more persuasive the medical opinions . . . will be." *Id.* § 404.1520c(c)(1).   Regarding the "consistency" factor, the "more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." *Id.* § 404.1520c(c)(2)

Recently, the Ninth Circuit confirmed that the "recent changes to the Social Security Administration's regulations displace our longstanding case law requiring an ALJ to provide 'specific and legitimate' reasons for rejecting an examining doctor's opinion." *Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022).   Thus, "the former hierarchy of medical opinions—in which we assign presumptive weight based on the extent of the doctor's relationship with the claimant—no longer applies.   Now, an ALJ's decision, including the decision to discredit any medical opinion, must simply be supported by substantial evidence." *Id.*   With that said, "[e]ven under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence.   The agency must articulate how persuasive it finds all of the medical opinions from each doctor or other source and explain how it considered the supportability and consistency factors in reaching these findings." *Id.* at 792 (cleaned up).   Although an "ALJ can still consider the length and purpose of the treatment relationship, the frequency of examinations, the kinds and extent of examinations that the medical source has performed or ordered from specialists, and whether the medical source has examined the claimant or merely reviewed the claimant's records . . . the ALJ no longer needs to make specific findings regarding these relationship factors . . . ." *Id.*

---

[4]   Other factors that may be considered by the ALJ in addition to supportability and consistency include the provider's relationship with the claimant, the length of the treatment relationship, the frequency of examinations, the purpose and extent of the treatment relationship, and the specialization of the provider.   20 C.F.R. § 416.920c(c).

2.      Dr. Coelho

The Court has already addressed, in Part IV.A above, Plaintiff's challenge to the ALJ's evaluation of Dr. Coelho's opinions.  As discussed, although Dr. Coelho's report contains ambiguous statements that can be rationally interpreted as expressions of mental limitations, it was rational for the ALJ to interpret those statements in a manner consistent with the RFC formulation.

The Court also notes that the ALJ's interpretation of Dr. Coelho's opinions was consistent with Dr. Coelho's other observations and the objective medical evidence in the record.  (*See, e.g.*, *id.* at 457 [follow up appointment after being seen for anxiety and depression: "overall she is doing pretty good"]; *id.* at 459 ["She is feeling much better now. . . . Affect is much more positive today.  She no longer appears anxious.  She is awake and alert and responds to questions appropriately."]; *id.* at 524 ["Mental status: alert and oriented x3, speech clear and appropriate, normal affect"]; *id.* at 533 ["Awake, alert, oriented and following commands"]; *id.* at 352 [third party function report: "For how long can the disabled person pay attention?" Answer: "No problem."]; *id.* at 695 ["[Plaintiff] is not participating in any type of mental health treatment at this time.  She has seen various individual counselors over the years.  No specific names or dates of treatment could be ascertained from [Plaintiff]. . . .  She is reporting she is not depressed at the time of the current evaluation."]; *id.* at 697 ["Her attention and concentration were good."]; *id.* at 699 ["She demonstrated sufficient levels of attention and concentration during the evaluation."]; *id.* at 766 ["Kratom tea & black seed oil to help with back pain.  They have been helping with anxiety & depression.  Not needing Xanax anymore, would like to decrease Paxil to 20mg."]; *id.* at 771 ["Patient verbalized understanding of the d/c instructions."]; *id.* at 775 ["Judgment and thought content normal."]; *id.* at 817 [October 3, 2018: "Recent and remote memory is intact.  Has good insight and comprehension."]; *id.* at 1182 [July 24, 2019: "Negative for confusion. . . . The patient is not nervous/anxious."].)  Additionally, when evaluating the severity of Plaintiff's mental impairments related to "concentrating and persisting" during step two, the ALJ found "mild limitations" because

1    although Plaintiff demonstrated some limitations "following instructions and completing

2    tasks," Plaintiff was able to "drive, prepare meals, read, manage funds, use the internet,

3    and handle her own medical care" and "the record fails to show any mention of

4    distractibility and an inability to complete testing that assesses concentration and

5    attention." (AR at 166.)  Accordingly, the Court finds no error.  *Cf. Kaufmann v. Kijakazi*,

6    32 F.4th 843, 851 (9th Cir. 2022) (a court "clearly err[s]" if it does not "[l]ook[] to all the

7    pages of the ALJ's decision" when evaluating the ALJ's explanations).

8                    3.        Physical Therapist Henry Saldana

9            Henry Saldana, Plaintiff's physical therapist ("PT"), treated Plaintiff from February

10   6, 2019 through April 19, 2019.[5]  (AR at 1119, 1151.)  Upon Plaintiff's discharge in April

11   2019, Saldana opined as follows:

12           Patient has made objective improvements with ROM, Joint Mobility,
             Strength, Soft Tissue Mobility.   These improvements have increased
13           patient's ability to perform these tasks: Standing> 15 minutes, Cleaning:
             Vacuuming, sweeping, Lifting from floor.  Patient continues to present with
14           impairments involving Soft Tissue Mobility, Strength, Posture, Pain, Joint
             Mobility of cervical spine with mild-minimal pain persisting in low back.
15           These deficits limit patient's ability to perform these tasks: Cleaning:
             Vacuuming, sweeping, Lifting from floor, Lifting overhead, Overhead tasks:
16           Changing light bulb, putting away dishes, Sitting> 15-30 minutes, Standing>
             20-40 minutes.   Patient has Reached maximum benefit from therapy,
17           Demonstrated independence with HEP, Been discharged per patient request.
             Patient has been discharged from Physical Therapy.
18

19   (*Id.* at 1116.)  PT Saldana also indicated that Plaintiff's "Rehab Potential/Prognosis" was

20   "Good." (*Id.*)

21           Plaintiff argues that the ALJ's failure to provide any discussion of PT Saldana's

22   opinion constitutes reversible error.  (Doc. 19 at 18-19.)  Plaintiff acknowledges that "the

23   record does not show that Dr. Narwani actually signed the assessment" but contends that

24   PT Saldana still qualifies as an "acceptable medical source" under the regulations.  (*Id.*)

25   Plaintiff further argues that PT Saldana's opinion is "dispositive" because the opined-to

26   limitations would have "precluded Plaintiff from performing her past relevant work," as

27

28   ---
     [5]      Dr, Ajay Narwani, M.D., is also listed as a treating provider on the medical
     discharge summary, but he did not sign the discharge summary.  (AR at 1118.)  Instead, it
     was electronically signed by Saldana.  (*Id.* at 1119.)

1    PT Saldana limited Plaintiff to only sitting for 15-30 minutes at a time. (*Id.* at 19-20.) The

2    Commissioner responds that PT Saldana's "statement did not qualify as a medical opinion

3    under the applicable regulations" and therefore the ALJ had no obligation to discuss it.

4    (Doc. 20 at 15-17.)   More specifically, the Commissioner argues that the opined-to

5    limitations were too indefinite to be meaningful. (*Id.* at 16-17 ["Mr. Saldana did not state

6    whether Plaintiff was unable to perform those tasks at all or whether she simply

7    experienced some mild amount of pain or limitation of motion when doing so. . . .

8    Additionally, concerning Plaintiff's sitting and standing abilities, Mr. Saldana gave no

9    opinion regarding how long Plaintiff could sit or stand at one time; rather, he simply

10   indicated that Plaintiff exhibited an improved ability to stand for longer than 15 minutes

11   but still experienced some limitation in sitting for longer than 15 to 30 minutes and standing

12   for 20 to 40 minutes."].)  In reply, Plaintiff asserts that PT Saldana's statement qualifies as

13   a medical opinion because he "provided a clear statement regarding Plaintiff's limitations

14   stemming from her impairments." (Doc. 21 at 4-5.)

15       Plaintiff has the better of these arguments.   Under 20 C.F.R. § 404.1513(a)(2), a

16   medical opinion is defined as a "statement from a medical source about what you can still

17   do despite your impairment(s) and whether you have one or more impairment-related

18   limitations or restrictions in the following abilities" which, as relevant here, include the

19   ability to "perform physical demands of work activities, such as sitting, standing, walking,

20   lifting, carrying, pushing, pulling, or other physical functions (including manipulative or

21   postural functions, such as reaching, handling, stooping, or crouching)." *Id.*  Following

22   the 2017 changes to the Social Security regulations, "[t]he agency must articulate how

23   persuasive it finds all of the medical opinions from each doctor or other source and explain

24   how it considered the supportability and consistency factors in reaching these findings."

25   *Woods*, 32 F.4th at 792 (cleaned up).  Here, it is undisputed that the ALJ did not discuss

26   PT Saldana's opinion.  This was error.  PT Saldana opined that Plaintiff would have some

27   limitations, including limitations related to sitting for more than 30 minutes and standing

28   for more than 20 minutes. (AR at 1116.)  The Commissioner cites no case law suggesting

- 14 -

1    that the presence of ambiguities in an opinion from a medical source, which otherwise

2    identifies limitations, permits an ALJ to ignore the opinion and decline to offer a rationale

3    for discrediting it.  *Cf. Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) ("We are

4    constrained to review the reasons the ALJ asserts.").

5         Nor was the error harmless.  As Plaintiff correctly notes, the limitations to which

6    PT Saldana opined would have precluded Plaintiff from performing her past relevant work.

7    The Commissioner does not argue otherwise—the Commissioner's sole (and incorrect)

8    argument on this issue is that it was permissible for the ALJ to ignore PT Saldana's opinion

9    and decline to discuss it.  (Doc. 20 at 16-17.)

10                    4.    Prior Administrative Medical Findings

11        As noted, the ALJ deemed "persuasive" the opinions of "the State agency

12   psychological reviewers."  (AR at 172.)  In their corresponding reports, these reviewers all

13   included a physical limitation—namely, that Plaintiff would be "Limited" in her ability to

14   reach in "any direction (including overhead)."  (*Id.* at 86, 106, 127, 153.)  However, the

15   ALJ did not include any reaching-related limitations in the RFC—instead, the ALJ

16   concluded without qualification that Plaintiff "can overhead reach."  (*Id.* at 168.)

17        Plaintiff contends the ALJ's approach was erroneous because, under Social Security

18   Ruling 96-8p, "[i]f the RFC assessment conflicts with an opinion from a medical source,

19   the adjudicator must explain why the opinion was not adopted."  (Doc. 19 at 20.)  Plaintiff

20   further contends the error was not harmless because, according to the Dictionary of

21   Occupational Titles ("DOT"), her past work consists of "jobs that require frequent

22   reaching."  (*Id.*)  In response, the Commissioner argues that "when read in context of the

23   remainder of the decision and the hearing testimony, it is apparent that this statement 'can

24   overhead reach' is a harmless scrivener's error and that the ALJ actually intended to include

25   a limitation to occasional overhead reaching."  (Doc. 20 at 17-18.)  The Commissioner

26   further argues that any error was harmless because "we know than an individual who was

27   limited to occasional overhead reaching could perform Plaintiff's past work as an office

28   manager and a medical secretary because the vocational expert testified to this at the

1    hearing." (*Id.* at 19-20.)  Plaintiff offers no additional argument in her reply brief.

2        Plaintiff has established that the ALJ committed error.  The ALJ deemed the state

3    agency reviewers' opinions persuasive but then adopted, without explanation, an RFC that

4    failed to incorporate one of the physical limitations to which all of the state agency

5    reviewers opined.  The Court is unwilling to disregard this as a "scrivener's error."

6        It is a closer call whether the error was harmless in light of the vocational expert's

7    testimony that Plaintiff's past work would only require occasional overhead reaching.  (AR

8    at 69.)  However, because the Court has already concluded that Plaintiff is entitled to a

9    remand for other reasons, it is unnecessary to decide whether this particular error would

10   alone require a remand—it is simply an additional issue the ALJ can address on remand.

11       C.    **RFC Determination**

12       Plaintiff's third assignment of error is that the "ALJ's step four finding was not

13   supported by the substantial evidence because the unrefuted opinions in the record

14   indicated Plaintiff cannot perform her past relevant work."  (Doc. 19 at 21.)  Plaintiff

15   reiterates her argument that her "unrefuted mental limitations preclude her from performing

16   her past relevant work" and also argues that her "unrefuted physical limitations preclude

17   her from performing her past relevant work."  (*Id.* at 22.)

18       As previously explained, the RFC determination as to Plaintiff's mental limitations

19   was supported by substantial evidence.  However, given the ALJ's failure to consider PT

20   Saldana's opinions regarding Plaintiff's physical limitations and failure to incorporate the

21   reaching limitations to which the state agency reviewers opined, the RFC determination as

22   to Plaintiff's physical impairments was marred by harmful error.

23       D.    **Incorrect Time Period**

24           1.    The Parties' Arguments

25       Plaintiff's final assignment of error is that the ALJ adjudicated the wrong benefit

26   time period, as the onset date should have been August 11, 2017 (the onset date stated in

27   Plaintiff's prior application for disability benefits) rather than October 15, 2017 (the onset

28   date stated in Plaintiff's underlying application).  (Doc. 19 at 23-24.)  Plaintiff contends

- 16 -

1    that her previous alleged onset date was implicitly triggered when the ALJ considered

2    "prior administrative medical findings in Exhibits 1A and 2A that were the reconsideration

3    level findings in the prior applications." (*Id.* at 24.)

4         In response, the Commissioner argues that the ALJ "made no indication that she

5    was reopening the prior determination" and "had no reason to reopen the prior

6    determination because both the prior determination and the ALJ's decision found that

7    Plaintiff was not disabled." (Doc. 20 at 21.)  The Commissioner explains that when a

8    claimant impliedly requests reopening, the ALJ "[n]eed not make a finding on the issue of

9    reopening the determination or decision if issuing an unfavorable decision." (*Id.* at 22,

10   quotation omitted.)  The Commissioner also notes that the ALJ "made no mention of

11   reopening Plaintiff's prior application or using an earlier alleged onset date." (*Id.*)  Finally,

12   the Commissioner argues that any error in the alleged onset date is harmless because

13   Plaintiff "has not presented evidence showing a significant change in her abilities" between

14   August 11, 2017 and October 15, 2017.  (*Id.* at 22-23.)

15        In reply, Plaintiff reiterates that "by adjudicating a time-period already adjudicated

16   by an earlier determination (October 15, 2017 through August 9, 2018), the ALJ reopened

17   that earlier determination." (Doc. 21 at 5-6.)  Plaintiff further contends that "[i]f the ALJ

18   did not intend to reopen the prior determination, the ALJ should have dismissed that portion

19   of the request for hearing under the doctrine of Administrative *res judicata*," and because

20   the ALJ did not do so, "there are unadjudicated periods in this case that warrant remand."

21   (*Id.* at 6.)

22             2.    Analysis

23        The Court finds it unnecessary to decide whether this issue provides an independent

24   basis for remand given its determination that Plaintiff is already entitled to a remand for

25   other reasons.

26        …

27        …

28        …

1        Accordingly,

2        **IT IS ORDERED** that the decision of the ALJ is **reversed** and the case is

3  **remanded** for further proceedings consistent with this opinion.  The Clerk shall enter

4  judgment accordingly and terminate this action.

5        Dated this 13th day of September, 2023.

6

7

8                                        Dominic W. Lanza

9                                 United States District Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28